**A.E. PENNEBAKER CO., INC., Plaintiff,**

v.

**R. Bruce FULLER and Robert H. Davis, Defendants.**

No. A–C–87–49.

United States District Court, W.D. North Carolina, Asheville Division.

July 5, 1988.

James R. Mann, Greenville, S.C., E. Glenn Kelly, Asheville, N.C., for plaintiff.

O.G. Calhoun, Greenville, S.C., for Fuller and Davis.

Daniel N. Ballard, Greenville, S.C., William E. Greene, Marvin P. Pope, Jr., Asheville, N.C., for Southern Tile and Marble.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ROBERT D. POTTER, Chief Judge.

THIS MATTER came on to be heard before the undersigned without a jury in Asheville, North Carolina on May 10 and 11, 1988. Plaintiff was represented by E. Glenn Kelly, Esq., and Defendants were represented by William E. Greene, Esq.

The Court heard the testimony of the witnesses and arguments of counsel and has examined the Exhibits admitted into evidence and the "Statement of Uncontroverted Facts" signed by the attorneys for Plaintiff and Defendants. Based thereon, the Court makes Findings of Fact as set out hereinafter.

Plaintiff's Exhibits are identified by the symbol "PX" and Defendants' Exhibits are identified by the symbol "DX."

### FINDINGS OF FACT

(1) Albert J. Smith (hereinafter "Smith") was President and principal shareholder of both Southern Tile and Marble, Inc. (hereinafter "Southern") and Pioneer Metal Products, Inc. (hereinafter "Pioneer") at all times during the period of the transactions between the parties to this lawsuit.

(2) R. Bruce Fuller (hereinafter "Fuller") and Rema C. Butler "for value received" executed a Mortgage Note dated November 26, 1975 in the amount of $200,000.00 (PX 9) with interest at 9% per annum payable to the order of Southern in monthly installments of $2,276.00 each, commencing February 1, 1976, and continuing until the interest and principal is paid in full, each installment to be applied first to interest and the balance to principal (hereinafter "Fuller Note"). The Fuller Note was secured by a Deed of Trust of the same date, including real and personal property (PX 10). The amortization schedule for the Fuller Note is set out in DX 24.

(3) Southern executed a Note in the amount of $52,500.00 dated January 8, 1980 (DX 20), payable to the order of Defendant Robert H. Davis (hereinafter "Davis"), a Security Agreement (PX 12), and an agreement (PX 13). The Note provided for

monthly payments of $950.00 to be applied first to interest and then to principal commencing February 8, 1981 and continuing through December 8, 1983. On January 8, 1984 the balance of principal and interest was due and payable.

The Note further provided for payments not to exceed $1,000.00 a month without penalty for prepayment. Prepayment penalty was 15% interest for one year on unpaid balance at time of prepayment.

The Security Agreement securing the Note included as collateral the Fuller *Note* dated November 25, 1975, secured by a Deed of Trust recorded in book 853 at page 93 of the Buncombe County Registry. (PX 12).

There was also an agreement between Southern and Davis dated January 8, 1980 (PX 13) which provided that if Southern was in default to Davis that Davis may deduct from Fuller's payment any amount by which Southern was in default to Davis. When Davis had been paid in full the agreement would be null and void.

Fuller was notified by Southern's letter dated January 8, 1980 to make all future monthly payments to Robert H. Davis (PX 14).

(4) On February 20, 1980, Southern executed a Note payable to the order of Davis for $79,000.00, with interest only to be paid for one year from date, payment in equal monthly installments of $1,500.00 beginning March 20, 1981 and running through February 20, 1984, and the balance of principal and interest payable on or before February 20, 1984. The Note provided for a prepayment penalty in the amount of interest for one year on the unpaid balance at the rate of 15% per annum. (PX 11). The $79,000.00 Note included the $52,500.00 debt (DX 20). Davis's check, dated February 20, 1980 (DX 26), was made payable to Smith, but Smith received it on behalf of Southern and Pioneer.

The February 20, 1980 Note was accompanied by a Security Agreement (DX 27) dated February 20, 1980 including as collateral the $200,000.00 Fuller Note (PX 9) and Deed of Trust recorded in Book 853 at page 93 (DX 10), both of which Davis already had possession.

(5) On May 9, 1980, Southern and Pioneer executed a Promissory Note to A.E. Pennebaker Co., Inc. (hereinafter "Pennebaker") for $300,000.00, payable ninety days after the date, or thirty days from the date of demand by Pennebaker in writing, whichever is later (PX 1). The Note was secured by a Deed of Trust of even date (DX 7), a Security Agreement dated April 10, 1980 (PX 2), and a Security Agreement–Receivables (PX 3) dated April 1, 1980 executed by Smith, Pioneer, Southern and Pennebaker (PX 1, 2, 3). Southern and Pioneer also executed an assignment "for the purpose of securing any advances made by Creditor to Debtors and the payment thereof" dated May 9, 1980, which assigned the Fuller Note and Deed of Trust to Pennebaker, subject to previous assignments thereof to Davis (PX 4).

The Security Agreement, dated April 10, 1980 (PX 2), included as collateral an assignment of Deed of Trust in the face amount of $158,000.00, "subject to a prior assignment for security purposes of said Note and Deed of Trust to Robert H. Davis, dated January 8, 1980." The Assignment (PX 4) contained the further paragraph: "It is further understood that this assignment is made subject to a previous assignment to Robert H. Davis of said Note and Deed of Trust." (PX 4).

(6) Davis executed an affidavit dated May 7, 1980, (PX 15) stating in substance that he was the noteholder of a Promissory Note secured by a Deed of Trust to Southern dated November 26, 1975 (the Fuller Note) in the original principal amount of $200,000.00, that the Mortgage Note was secured by a Deed of Trust recorded in Book 853 at page 93, Buncombe County Registry, and that the balance owing Davis as of May 7, 1980 was $79,000.00. The affidavit further stated that he was aware that the original Note and Deed of Trust in the amount of $200,000.00 was to be pledged to Pennebaker, and ... "shall be subordinate and junior to any and all claims that I have in the aforementioned

Note and Deed of Trust to Southern" (PX 15).

(7) Fuller executed an affidavit that as of May 1, 1980 the balance due on his $200,000.00 Note to Southern was $153,-175.68. (PX 16).

(8) Southern, Pioneer, Smith, and Gerald Downs individually executed a Note dated June 24, 1981, payable to the order of Pennebaker in the amount of $510,000.00 payable on demand at any time after ninety days from date. Also executed on the same date were a Deed of Trust on real property, a Security Agreement, and Security Agreement–Receivables. (PX 5, 6, 7; DX 45). On October 15, 1983, Pioneer and Southern executed an addendum No. 1 to Security Agreement–Receivables (PX 8). The reference to the Fuller Deed of Trust in Paragraph 2.e. of PX 6 includes the statement: "It is understood that such assignment is subject to a prior assignment by Debtors to secure an indebtedness to another party of approximately $72,-000.00."

(9) On January 12, 1982, Southern executed and delivered to Pennebaker a Deed which is recorded in Deed Book 1288 at Page 584, Buncombe County Public Registry (DX 8), and which describes the same property as in the Deed of Trust from Southern dated May 9, 1980 securing $300,-000.00 to Pennebaker (DX 7).

(10) Smith executed a Note dated May 1, 1982 payable to the order of Robert H. Davis in the amount of $25,000.00 in equal monthly installments of $776.00 until May 1, 1984 at which time the remaining principal and interest was due. (PX 17). The $25,000.00 was transmitted by Smith to Pioneer according to Smith's testimony and as shown by endorsement of Davis' check No. 310 (DX 36) and the June 24, 1982 entry on Page 3 of Plaintiff's ledger sheet (PX 25).

(11) On May 12, 1982, Smith executed an assignment of full payment of $2,276.00 being received from Fuller on Deed of Trust for benefit of Southern, "part of which has already been assigned to Robert H. Davis by assignment dated January 8, 1980." (PX 18). The Assignment dated May 12, 1982 (PX 18) was executed by Smith as President of Southern, assigning to Davis the Fuller monthly payment of $2,276.00 being paid on the Fuller Note. This was $776.00 over the $1,500.00 already being paid to Davis from the Fuller Note under Security Agreement dated February 20, 1980 (DX 27), although the Assignment (PX 18) referred to the Assignment of January 8, 1980 (PX 12), which was the first Security Agreement between Southern and Davis.

(12) Smith executed a Mortgage Note for $25,000.00 payable to Davis and a Deed of Trust dated May 1, 1982, to secure the Note (PX 17, DX 34). The amortization schedule for the Note is set out in DX 38.

(13) Davis executed and recorded a "Request for Copy of Notice of Sale" on May 10, 1983 and August 12, 1983 (DX 43, 44).

(14) Smith executed a Mortgage Note in the amount of $35,334.87 dated March 1, 1984, payable to Davis, at the rate of $776.00 per month commencing April 1, 1984 and continuing until March 1, 1987, at which time the entire balance was due (PX 22). The Note was secured by a Deed of Trust of even date (DX 40). The amortization schedule for the Mortgage Note is explained in DX 42.

(15) From June 2, 1980 through May 8, 1987, Davis received 83 checks from Fuller in the amount of $2,276.00 each, 20 of which were payable to Southern and the remainder to Davis. (Statement of Unconverted Facts ¶ 24.)

(16) From June, 1987 through March 4, 1988 Davis received from Fuller 10 additional checks for the sum of $2,276.00 each payable to Davis. (Id. at ¶ 25.)

(17) James R. Mann, Attorney for Pennebaker, wrote to Fuller on December 20, 1984, and sent a copy of that letter to Smith, Pioneer, Southern, and Davis (PX 19). Mann's letter stated in substance that the obligation on the promissory Note to Davis, which had a balance of $79,000.00 as of May 7, 1980, would have been completed as of March 1, 1980 by the application of "regular and proper payments" by Fuller, and that therefore his client, A.E. Penne-

baker, had been deprived of payments since March of 1984, and that Davis had incorrectly profited from that circumstance. The letter further advised Fuller:

The immediate purpose of this letter is to advise you that, pursuant to their assignment, all future payments on your Promissory Note and Deed of Trust are to be made to A.E. Pennebaker Co., Inc. ... Any payments made to any other party will not be credited on your indebtedness to my client.

(18) Davis answered by letter dated December 31, 1984, stating that he had been paid $1,500.00 per month by Fuller in accordance with the Note to him from Southern and that the balance of $776.00 had been returned to Smith to apply to Smith's loan "paying on a Deed of Trust on Certain Haw Creek property." (DX 48).

(19) At the request of S.J. Crow, Attorney, Fuller supplied Crow with a copy of the letter from Smith, dated January 8, 1980, directing that Fuller make monthly payments on the November 26, 1975 Mortgage Note to Davis until further notified. (PX 20, 14).

(20) By consent order filed October 29, 1986 in U.S. Bankruptcy Court for the Western District of North Carolina, Pennebaker agreed to the following:

a. Pioneer Metal's debt to Pennebaker was $207,266.72 of which $95,170.00 was secured by furniture, fixtures, and equipment of Pioneer, and the balance was unsecured in the amount of $122,096.72. (DX 51).

(21) On June 29, 1987, Pennebaker entered into an agreement with Southern and Smith that

... in consideration of the sum of Forty Thousand ($40,000.00) and no/100ths dollars to be paid as hereinbelow provided A.E. Pennebaker Co., Inc. covenants and agrees that it will not sue, pursue or litigate any claims against Southern Co., Inc. or Albert J. Smith which have arisen as a result of the Promissory Notes and Guaranty agreements referred to in the pending action ... (DX 4).

(22) James R. Mann, Attorney, Greenville, South Carolina, testified that he had practiced 41 years, that he was Pennebaker's attorney for 8 years. On cross-examination he testified, as to DX 4, that though it was termed a covenant not to sue "it was fully understood that as far as the two entities were concerned that was it," and that the settlement agreement concluded any right of Pennebaker to recover anything further from Southern or Pioneer. He stated that the purpose of the settlement agreement was to conclude the right of Pennebaker to recover any money whatsoever and "to get what we could."

(23) Pennebaker's representatives never asked to see and never saw the Note from Southern to Davis until the summer of 1987 but relied on the affidavits from Davis and Fuller and assumed that the $2,276.00 payment on the Fuller Note was to be paid to Davis.

(24) Pennebaker did not make a demand for payment on Southern and Pioneer before November 24, 1986 when Attorney Mann wrote his demand letter (DX 46).

(25) Based on the testimony and the Court's appraisal of the credibility of the witnesses the Court specifically finds as a fact that Smith had told A.E. Pennebaker that the payments on the Davis Note were $1,500.00 monthly and A.E. Pennebaker informed Smith that he was not concerned with the disposition Smith made of the difference between the payment of $2,276.00 paid by Fuller to Davis and the $1,500.00 Davis applied to payment of the monthly installments on the Note from Southern to Davis. Pennebaker felt that it had sufficient collateral and never gave any instructions to Smith as to the $776.00 or the $1,500.00 monthly payment under the terms of the Note.

(26) The terms of the February 20, 1980 Note from Southern to Davis providing for payment in full of the Note on or before February 20, 1984 were amended on or about March 20, 1981 to provide for continuation of the $1,500.00 monthly payment.

(27) In June of 1982, Davis applied the $776.00 remaining from the Fuller payment to the $25,000.00 Note to Davis (PX 17) under Assignment from Southern (PX 18)

in accordance with the amortization schedule (DX 38).

(28) After the May 1, 1982 Note from Southern to Davis Pennebaker made no demand as to the $776.00 portion of the Fuller payment.

(29) Pioneer continued to do business with Pennebaker in 1982, 1983, and 1984 and continued to make payments to Pennebaker.

(30) The outstanding balance on the $79,-000.00 Note from Pennebaker to Davis, at the time of trial, was approximately $14,-000.00.

(31) Smith's Note dated March 1, 1984 (PX 22) and the Deed of Trust securing the same (DX 40) for $35,334.87 contained the statement that it represented a refinancing of the $25,000.00 Note and Deed of Trust dated May 1, 1982.

(32) Smith informed Pennebaker that the Davis Note would not be paid in 1984, but would be paid in 1988.

(33) At all times when Smith executed instruments in this matter, whether denominated in his capacity as an officer of Southern and Pioneer, or not, he was acting for and on behalf of Southern and Pioneer.

In summary, the transactions detailed in the preceding thirty-three paragraphs are so detailed that the reader is probably at this point wondering "who's on first?". Essentially, it comes to this:

Fuller became indebted to Southern for the sum of $200,000.00 for which he executed a Note and Deed of Trust dated November 26, 1975.

Then, Southern fell on hard times and borrowed $52,500.00 from Davis for which it executed a Note and Deed of Trust, dated January 8, 1980, with monthly payments of $950.00. As additional security, Southern executed and delivered to Davis a Security Agreement which included as collateral the Fuller Note and Deed of Trust, which Security Agreement, together with the Fuller Note and Deed of Trust to Southern, was delivered into the possession of Davis. Fuller was directed in writing to make all further payments on the Fuller Note to Davis, who would keep the payments due to him under his Note and would forward the rest to Southern and Pioneer.

Next, Southern needed more money, so it went back to Davis, executed and delivered another Note to him dated February 20, 1980 together with another Security Agreement of the same date. Again, the Fuller Note, which Davis already had in his possession, was included as collateral. Southern directed Davis to keep $1,500.00 of the $2,276.00 payment on the Fuller Note, and to pay the balance of $776.00 to Southern. The check (DX 26) was from Davis to Smith, but according to Smith, it was received by him for Southern and Pioneer and used in their businesses.

Now, Southern and Pioneer needed a line of credit, so they went to Pennebaker, a factor, and executed and delivered a Note for $300,000.00 dated May 9, 1980, together with a Deed of Trust and an Assignment of the Fuller Note, subject to the previous Assignment to Davis. The Fuller Note remained in Davis's possession. Southern and Pioneer also obtained a Security Agreement, which included the Fuller Deed of Trust as collateral (but not the Note), a Security Agreement–Receivables, and an Affidavit from Davis that stated that he was the Noteholder of the Fuller Note and that the present balance on that Note as of May 7, 1980, was $79,000.00. No one representing Southern or Pioneer ever saw the Note which Davis had in his possession until the summer of 1987.

Next, these growing businesses, Southern and Pioneer, needed more money, so they went back to the well—Pennebaker.

Pennebaker obtained another Note from Southern and Pioneer dated June 24, 1981, for $510,000.00, together with a Deed of Trust, a Security Agreement–Receivables, and a Security Agreement and a Deed for real property (DX 8), and presumably made more money available to Southern and Pioneer in return for the payment by the two of certain fees as follows:

(b) Upon prior approval by Secured Party, Debtors may place orders for raw materials useful and necessary in the

manufacture of the stoves, with Secured Party to be billed by suppliers thereof. Secured Party shall be responsible for the payment of such invoices, and upon receipt thereof shall be entitled to bill Debtors on account of the sale and delivery of the materials represented by said invoices in an amount equivalent to 106% of the original invoice amount. On the first day of each calendar month after the initial billing by Secured Party an additional fee of 3½% shall be added to the balance of all of Secured Party's invoices and monies advanced then outstanding. Secured Party may demand payment of any invoice at any time after maturity of the promissory note secured hereby, and shall, at all times, be entitled to off-set any amounts due on such invoices against any receivables of Debtors.

(c) Upon prior approval by Secured Party, Debtors may place finished stoves in a bonded warehouse, and upon receipt of the warehouse receipts therefor Secured Party shall advance to Debtors the amount of $300.00 on each Elite model and $200.00 on each Petite model less a service charge of 6%. On the first day of each calendar month after entry and payment as aforesaid an additional fee of 3½% shall be added to the basic $300.00 advance. Secured Party may demand repayment of any such advances at any time after maturity of the promissory note secured hereby, and shall, at all times, be entitled to off-set any amounts due on such advances against any receivables of Debtors. Upon withdrawal of any stove Debtors shall deliver to Secured Party the full price of the same, either in funds or in receivables, whereupon Secured Party shall pay over to Debtors any surplus, subject to Secured Party's right to off-set against any outstanding indebtedness of Debtors.

Obviously, Southern and Pioneer were getting into deep water with this kind of financing. So, they returned to the fellow who held the one asset they had with some value and in which they had an interest: the Fuller Note. Davis came up with $25,000.00 in return for a Note dated May 1, 1982, a Deed of Trust of the same date, and an Assignment of the remaining portion of the Fuller payments, *i.e.*, the $776.00 over and above the $1,500.00 monthly payments which Davis already was entitled to receive.

Well, this was May. Southern and Pioneer were in the wood stove business. Business probably wasn't too good, and with the payments to Pennebaker and Davis, and presumably very few sales of wood stoves, and oil becoming cheaper, Southern and Pioneer made one last gasp and went back to Davis for just a little more money, the $35,334.87, which included the $25,000.00 May 1, 1982 Note. Southern and Pioneer execute another Note and Deed of Trust dated March 1, 1984.

That's the end of the transactions with Davis.

However, Pennebaker continued doing business with Southern and Pioneer and by March of 1987 had come up with $605,091.31 in finance charges and advances for a total of $964,270.78 (DX 47). Pennebaker became nervous. Something had to be done. That something was to sue Southern, Davis, and Fuller in December of 1986 in the United States District Court of South Carolina. Smith on behalf of Southern went to Pennebaker and said in substance, "I have $40,000.00. I can either give it to you or the lawyers and accountants." Pennebaker, being experienced in such matters, decided that the lawyers and accountants didn't need the money as much as Pennebaker and accepted the $40,000.00, agreeing to a dismissal of its lawsuit in South Carolina. The South Carolina Court very wisely and with complete justification decided to rid itself of this brouhaha and send it to this Court "for the convenience of witnesses and in the interests of justice."

That, briefly brings us to where we are.

Based on the Findings of Fact, the Court makes the following Conclusions of Law:

## CONCLUSIONS OF LAW

(1) Defendant Davis was granted a security interest in the $200,000.00 Note (PX

9), and Deed of Trust (PX 10) by the Security Agreement (PX 12) dated January 8, 1980, between Southern, "Debtor" and Davis, "Secured Party." Article 9 of the Uniform Commercial Code applies to "any transaction which is intended to create a security interest in ... instruments ..." N.C.Gen.Stat. § 25–9–102.

(2) The Fuller Mortgage Note (PX 9) is a negotiable instrument and therefore is subject to Article 9 of the U.C.C. N.C.Gen. Stat. §§ 25–3–104, 25–9–105(1)(i) (1986).

(3) A security interest in money or instruments (other than instruments which constitute part of chattel paper) can be perfected only by the secured party's taking possession. N.C.Gen.Stat. § 25–9–304(1) (1986).

(4) "A security interest in ... instruments ... may be perfected by the secured party's taking possession of the collateral.... A security interest is perfected by possession from the time possession is taken without relation back and continues only so long as possession is retained, unless otherwise specified in this article." N.C.Gen.Stat. § 25–9–305 (1986).

(5) "When so agreed and in any event on default the secured party is entitled to notify an account debtor or the obligor on an instrument to make payment to him whether or not the assignor was theretofore making collections on the collateral, and also to take control of any proceeds to which he is entitled under G.S. 25–9–306." N.C.Gen. Stat. § 25–9–502(1) (1986). "Collateral" means the property subject to a security interest. N.C.Gen.Stat. § 25–9–105(1)(c).

(6) N.C.Gen.Stat. § 25–9–312(5) (1986) provides:

> In all cases not governed by other rules stated in this section (including cases of purchase money security interests which do not qualify for the special priorities set forth in subsections (3) and (4) of this section), priority between conflicting security interests in the same collateral shall be determined according to the following rules:
>
> > (a) Conflicting security interests rank according to priority in time of filing or perfection. Priority dates from the time a filing is first made covering the collateral or the time the security interest is first perfected, whichever is earlier, provided that there is no period thereafter when there is neither filing nor perfection.
> >
> > (b) So long as conflicting security interests are unperfected, the first to attach has priority.

And N.C.Gen.Stat. § 25–9–312(7) (1986) governs future advances:

> If future advances are made while a security interest is perfected by filing or the taking of possession, the security interest has the same priority for the purposes of subsection (5) with respect to the future advances as it does with respect to the first advance. If a commitment is made before or while the security interest is so perfected, the security interest has the same priority with respect to advances made pursuant thereto. In other cases a perfected security interest has priority from the date the advance is made.

Application of the priority rules to future advances is complicated. In general, since any secured party must operate in reference to the Code's system of notice, he takes subject to future advances under a prior security interest while it is perfected through filing or possession, whether the advances are committed or non-committed, and to any advances subsequently made "pursuant to commitment" (N.C.Gen.Stat. § 25–9–105) during that period. N.C.Gen. Stat. § 25–9–312 (1986), Note 7, Amended Official Comments. *See also* Example 5 under Note 7:

> Example 5. On February 1, A makes an advance against machinery in the debtor's possession and files his financing statement. On March 1, B makes an advance against the same machinery and files his financing statement. On April 1, A makes a further advance under the original security agreement against the same machinery (which is covered by the original financing statement and thus perfected when made). A has priority over B both as to the February 1, and as to the April 1 advance and it makes no

difference whether or not A knows of B's intervening advance when he makes his second advance.

A wins, as to the April 1 advance, because he first filed even though B's interest attached, and indeed was perfected, before the April 1 advance. The same rule would apply if either A or B had perfected through possession.

■ (7) Defendant Davis had possession of and therefore a perfected security interest in the $200,000.00 Fuller Note (the collateral) which was included in the Security Agreement dated January 8, 1980 (PX 12), since Defendant Davis, at least on that date, had possession of the Note (instrument) (PX 9). Defendant Davis continued in possession of the Note and was in possession of it on February 20, 1980, the date of the second Security Agreement dated February 20, 1980 (DX 27), which was also the date of the Note for $79,000.00 from Southern to Davis. Therefore, Davis's Security Interest in the February 20, 1980 Note and Deed of Trust was perfected on that date, and Pennebaker's Security Agreement dated April 10, 1980, (PX 2) by its express wording and also by virtue of N.C.Gen.Stat. §§ 25–9–305 and 25–9–312(5)(a) is subject to both Davis's Security Agreement dated January 8, 1980 and the Security Agreement dated February 20, 1980. On December 20, 1984, Fuller was notified by Southern to make payments to Davis (PX 19). The letter from Pennebaker's attorney, Mann, (PX 19), directed Fuller to commence making payments to Pennebaker and contended that the attached amortization schedule indicated that Davis should have been paid by March 1, 1984. Since the amortization schedule attached to Mann's letter was not in conformity with the Note (PX 11), that was, in fact, not the case. Mann's letter did not indicate any default in Southern's debt to Pennebaker, and Southern continued to make payments to Pennebaker until November 14, 1986. In any event, Pennebaker had not perfected its Security interest in the Fuller Note by possession of it, whereas Davis had, and Fuller was obligated to continue to make payments to Davis in accordance with the Notice to Fuller by Southern dated January 8, 1980 (PX 14). Davis had not been paid in full, had priority to Southern's Security Agreement, and payments to Pennebaker by Fuller were not to commence until after Davis had been paid in full (PX 19). N.C. Gen.Stat. §§ 25–9–312; 25–9–105(1)(c); 25–9–312(5)(a); 25–9–312(5)(b).

■ (8) Since Davis continuously held the $200,000.00 Note (PX 9), he was in possession of it on May 1, 1982 when Smith executed another Note for $25,000.00 to Davis (PX 17). Therefore, that advance under the prior Security Agreements dated January 8, 1980 (PX 12) and February 20, 1980 (DX 27), while Davis possessed the $200,000.00 Note (PX 9), was prior to any subsequent unperfected security interest held by Pennebaker.

The $25,000.00 Note (PX 17), although signed by Smith in his individual capacity, was transmitted to Pioneer and Davis was entitled to receive the entire $2,276.00 monthly payments on the Fuller Note as a result of such advance.

(9) The $35,334.87 Note (PX 22) was a refinancing of the $25,000.00 Note (PX 17). See Smith's testimony and last paragraph in Deed of Trust (DX 40).

## CONCLUSION

Fuller paid his Note (PX 7) in full in accordance with the instructions of the payee and the priority position of the secured party, and has no further liability.

Davis had perfected his security position in the $200,000.00 Fuller Note by possession of it. Pennebaker never had possession of the Fuller Note. Therefore, Davis's security position in the Fuller Note had priority over Pennebaker's and Davis was entitled to collect all or any portion of the monthly payment by Fuller as agreed by Southern, Pioneer, and Smith until he was paid in full on the indebtedness represented by DX 20, PX 11, 17, and 22. Since Davis had not been paid in full on the indebtedness due him by Southern, he was entitled to collect the entire amount of the payment on the Fuller Note under his prior security position. Therefore, he now has no liability to Pennebaker, which has never perfected

any security interest in the Fuller Note. N.C.Gen.Stat. §§ 25–9–301(1)(a); 25–9–312.

A Judgment will be filed simultaneously herewith declaring that Pennebaker take nothing of Defendants and that Defendants recover their costs, not to include attorney's fees.

## JUDGMENT

In accordance with the Findings of Fact and Conclusions of Law entered simultaneously herewith,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Judgment be entered in favor of Defendants and against Plaintiff, that Plaintiff have and recover nothing of Defendants, and that Defendants have and recover of Plaintiff their costs in this action, not including attorney's fees.